UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
at GREENVILLE

| | | |
|---|---|---|
| CONNIE LEE ARNOLD, #000619 | ) | |
| | ) | |
| v. | ) | NO. 2:08-CV-77 |
| | ) | *Greer/Inman* |
| TONY PARKER, Warden | ) | |

## **MEMORANDUM & ORDER**

Acting *pro se*, state inmate Connie Lee Arnold brings this application for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under a 1995 Carter County, Tennessee judgment convicting him of one count of child rape and one count of sexual exploitation of a minor, (Doc. 3). For these offenses, petitioner is serving an effective 37-year prison sentence [25 years at 100% (child rape) and 12 years at 30% (sexual exploitation), consecutive to the child rape count]. The Court has before it motions filed by petitioner, (Docs. 1, 4 & 7), the response to the application, filed by respondent Warden, (Doc. 21), and the state court record, also filed by Warden Parker, (Doc. 22, Addenda 1-6). Thus, the case is ripe for disposition.

### **I. Petitioner's Motions**

In the first of petitioner's motions, he seeks leave to proceed in this case without prepayment of the filing fee. Petitioner has paid the five-dollar ($5.00) filing

fee and, therefore, his motion to proceed *in forma pauperis* is **DENIED** as **MOOT**, (Doc. 1).

In the second motion, petitioner requests to be provided copies of his trial transcript to show that he is "without a shadow-of-a-doubt, totally, absolutely innocent" of the crimes for which he stands convicted, (Doc. 4). As noted, respondent has filed copies of the state court record, which include transcripts of petitioner's trial and post-conviction hearing, and he has also certified that he has mailed copies of all those documents to petitioner, (Doc. 22). Therefore, since petitioner seemingly has received that which he sought in his motion, the motion is **DENIED** as **MOOT**, (Doc. 4).

Petitioner has also filed a letter, accompanied by a mishmash of documents, indicating that the entire submission is intended to be a motion to amend, (Doc. 7). The motion is **GRANTED**. Fed. R. Civ. P. 15(a).[1] More specifically, the Court **GRANTS** petitioner's request to substitute Acting Warden Henry Steward for respondent Warden Tony Parker and **DIRECTS** the Clerk to docket Acting Warden Steward as the respondent. Likewise, the Court **GRANTS** petitioner's motion to

---

[1] *See* Rule 11 of the Rules Governing Section 2254 Cases (providing that "the Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules"); "*Mayle v. Felix*, 545 U.S. 644, 655 (2005) (observing that Fed. R. Civ. P. 15 applies to habeas proceedings).

amend his petition to add claims of constitutional error, to the extent that these are not duplicates of claims already asserted in the original petition.

## II. Response to the Petition

A state prisoner's petition for a writ of habeas corpus will not be granted unless the petitioner has exhausted his available state court remedies, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the petitioner. 28 U.S.C § 2254(b)(1). Respondent concedes that petitioner has exhausted his state court remedies, but that only one claim was actually presented to the state [appellate] courts for review. All other claims in the original petition are barred from presentation to the Tennessee courts, according to respondent, and thus, have been procedurally defaulted.

### A. Facts

The following factual recitation is drawn from the Tennessee Court of Criminal Appeals' opinion on petitioner's direct review.

> Earnest Hendrix, a cab driver, testified that on October 23, 1994, he was driving the defendant from Knoxville to Kingsport. He said that the defendant showed him a photograph depicting oral sex. Mr. Hendrix said that the defendant told him that the penis in the photograph was his and the girl was his daughter. The state introduced a Polaroid photograph into evidence as exhibit two, and Mr. Hendrix identified it as the one displayed by the defendant. He testified that the defendant offered to have his daughter perform oral sex on him in lieu of the cab fare. Mr. Hendrix said that upon their arrival in Kingsport, he called the police.

> The victim testified that she was eleven years old in October 1994. She said that before Halloween, she was attending to her sick grandmother when her father, the defendant, came to the door and motioned her out of the room. She said the defendant grabbed her arm and took her to his bedroom. She said he put his camera on the dresser, pushed her head down, stuck his penis in her mouth, and told her to go up and down on it. She said that he reached over and pushed the button on the camera. She identified exhibit two as the photograph the defendant made that day. The jury found the defendant guilty of both counts.

*State v. Arnold,* 2000 WL 14691, at *1

**B. Procedural History**

Petitioner was indicted in Johnson County, Tennessee for three counts of child rape and two counts of especially aggravated sexual exploitation of a minor. Upon petitioner's motion, three counts were severed and he went to trial on one count of child rape and one count of the especially aggravated sexual exploitation offense. During voir dire of the Johnson County Criminal Court jury, the trial judge granted petitioner's motion to change venue because petitioner's right to a fair trial was in jeopardy, due to general community knowledge of petitioner's criminal history, as revealed during the questioning of potential jurors. The trial was moved to an adjoining county.

Later, petitioner's case was tried to a jury in the Carter County Criminal Court and he was found guilty of both offenses. The three remaining counts were dismissed. Petitioner filed a motion for a new trial, but the trial court denied the

motion. Petitioner unsuccessfully appealed to the Tennessee Court of Criminal Appeals and, soon after, was denied further review by the Tennessee Supreme Court. *State v. Arnold*, No. 03C01-9902-CR-00081, 2000 WL 14691 (Tenn. Crim. App. Jan. 11, 2000), *perm. to app. den.* (Tenn. 2000).

Petitioner then began his quest for state post-conviction relief by filing a *pro se* petition in the Carter County Criminal Court. Finding that the post-conviction petition failed to state a colorable claim for relief, the trial court dismissed it and the state appellate court affirmed. *Arnold v. State*, No. E2001-02526-CCA-CR3-PC, 2002 WL 31512404 (Tenn. Crim. App. Nov.13, 2002). The state supreme court granted review and remanded the case to the lower appellate court for reconsideration in light of a new decision it had issued. Upon remand, the Court of Criminal Appeals again affirmed the trial court's judgment, *Arnold v. State*, No. E2003-00691-CCA-RM-PC, 2003 WL 1877236 (Tenn. Crim. App. Apr.15, 2003), and again the Tennessee Supreme Court reversed, but this time remanded the case to the trial court for appointment of counsel. *Arnold v. State*, 143 S.W.3d 784 (Tenn. 2004).

Counsel was appointed and, after an evidentiary hearing on petitioner's claims, the post-conviction court denied relief. The state appellate court affirmed that judgment, and the state supreme court rejected petitioner's application to appeal the lower state appellate court's decision. *Arnold v. State*, No. E2006-00440-CCA-R3-

PC, 2007 WL 2216554 (Tenn. Crim. App. Aug. 3, 2007), *perm. to app. den.* (Tenn. 2007). This timely § 2254 habeas corpus petition followed.

## C. The Claims in the Petition

### 1. *Ineffective Assistance-Conflict of Interest (Pet. at 5, Ground one).*

Petitioner charges that his attorney, Rick Spivey of Kingsport, Tennessee, gave him ineffective assistance by failing to reveal that he was married to an attorney with the 2nd Judicial District's Child Support Division. According to petitioner, this constituted a conflict of interest which resulted in petitioner's being railroaded, with counsel's help, to prison. Respondent argues that this claim was not offered to the Court of Criminal Appeals and that this constitutes a procedural default. Respondent further argues that, regardless of any procedural default, there is no proof to support this claim.

a) *Procedural Default.* As noted earlier, there is a statutory requirement that a petitioner must first exhaust his state court remedies by "fairly presenting the legal and factual substance of every claim," *see Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987), to all levels of state court review, including the highest state court on discretionary review, where such review is part of the state's ordinary appellate review procedure. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999). If a petitioner fails fairly to present his federal claims to the state courts, and in accordance with the state's procedural rules, he forfeits the right to federal habeas

corpus review of those claims, unless he can show cause for his non-compliance and actual prejudice as a result of the claimed constitutional violations, *Engle v. Isaac*, 456 U.S. 107, 129 (1982), or can demonstrate that he is actually innocent so that the failure to review his claims will result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

This claim was raised in the post-conviction court, but not in the Court of Criminal Appeals. The failure to offer the claim to the intermediate state court constitutes a procedural default, which may be overcome by a sufficient showing of cause and prejudice. To the extent that petitioner's assertion that his post-conviction attorney "sold [him] out" at his post-conviction hearing and his last two appeals, (Doc. 3, Pet. at 6,¶ 13), is meant to serve as cause to excuse his procedural default, such a claim of cause would be a non-starter.

Though constitutionally ineffective assistance of counsel will meet the cause requirement, *see id.* at 488, the Constitution does not confer a right to an attorney in state post-conviction proceedings, *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and "[o]f course, the right to effective assistance of counsel is dependent on the right to counsel itself." *Evitts v. Lucey*, 469 U.S. 387, 397 n.7 (1985) (citation omitted). Since petitioner had no constitutional right to counsel in those state court proceedings in the first place, counsel's assistance could not have been

constitutionally inadequate. Since the representation given petitioner by his post-conviction counsel did not violate the Constitution, no cause has been shown.

b) *Substantive Claim.* Moreover, no actual conflict of interest on the part of Attorney Spivey was ever established. During petitioner's state post-conviction hearing, he admitted during his direct examination that he had no personal knowledge of whether defense counsel's attorney wife had had any contact with his case and, when asked why [the Spiveys' marriage] caused a conflict, he replied: "Well, you know they had to be a conflict there," (Addendum 3, Pt. 1 at 15-16). A mere showing that counsel represented potentially conflicting interests, as opposed to actual conflicting interests, is not enough to establish a claim of ineffective assistance. *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980).

### 2. *Ineffective Assistance-The Venue Issue (Pet., at 5, Ground two).*

The following factual allegations support this claim. Petitioner was absent from the courtroom, using the bathroom, during the voir dire of the jury in Johnson County Criminal Court. However, when he returned to the courtroom, he discovered that, in his absence, the trial court had granted a "silent mistrail" (sic) of his case and moved it to Carter County, where all jury members, all the law, every one, and television, radio and news reporters knew one another real well and knew about every crime committed. Petitioner contends that his attorney should have filed a motion for a change of venue on this basis.

8

To establish a claim of ineffective assistance, a petitioner must show that counsel's performance was deficient and that the sub-par performance was prejudicial to the defense, so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687(1984). Decisions of the state courts are reviewed pursuant to 28 U.S.C. § 2254(d), which limits a federal district court's jurisdiction to examine habeas claims on the merits. For example, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C.§ 2254(d)(1) and (2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts that cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An "unreasonable application" of federal law occurs when the state court decision correctly identifies the governing legal rule in Supreme Court cases but unreasonably applies or unreasonably refuses to extend that principle to the particular facts of the case. *See id.* at 413; *Ramdass v. Angelone*, 530 U.S. 156,

166 (2000). The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Williams,* 529 U.S. at 411.

In reviewing petitioner's claim of ineffective assistance, the state court accurately cited to the two-prong test articulated in *Strickland.* Therefore, its decision is not contrary to the controlling legal rule for determining such claims. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) (holding that *Strickland* "squarely govern[s]" such claims). The issue for review, thus, is whether the state court unreasonably applied *Strickland* in rejecting the claim.

The claim that petitioner raised in his post-conviction appellate brief was that he was prejudiced by pretrial publicity, of which the trial judge was aware but who, nonetheless, refused to grant a change of venue, (Addendum 6, Doc. 1, Pet'r's Brf. at 10). Notably, petitioner attributed the failure to change venue to the trial court and did not apportion any part of that alleged error to his attorney. Even so, the state appellate court addressed the claim as petitioner had raised it in the post-conviction court and as the state had interpreted the claim in its brief, *(Id.,* Doc. 2, State's Brf. at 14)—as alleging that trial counsel gave petitioner ineffective assistance by failing to file a motion for a change of venue due to pretrial publicity. *See Arnold v. State*, No. E2006-00440-CCA-R3-PC, 2007 WL 2216554, *5.

In its discussion of the claim, the Court of Criminal Appeals pointed out that the trial judge, defense counsel, and the state prosecutor had all testified that pretrial publicity was not a problem in the case. *Id.* It also noted that, while petitioner maintained that there was media coverage of his case "from Mountain City to Carter County," he likewise stated that he had learned about pretrial publicity from his wife and acknowledged that the jurors had said that they knew nothing about his case. *Ibid.* Finally, the state appellate court indicated that petitioner had offered evidence of two newspaper articles about his case, but that both articles appeared in print after he was convicted. *Ibid.* Finding that petitioner produced no evidence of any pretrial publicity, the Court of Criminal Appeals determined that Attorney Spivey did not render a deficient performance by failing to file a motion for a change of venue. *Ibid.*

The Sixth Amendment guarantees a defendant the right to a trial by an impartial jury. U.S. Const. amend. VI. This fair-trial right is effectuated by impaneling a jury of impartial, "indifferent" jurors who render a verdict based on evidence adduced at the trial. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). To show that he has not been tried by an impartial jury, a petitioner must point to particular jurors actually selected to serve in his case who were prejudiced against him. He can show actual prejudice by showing that a juror had a fixed opinion about guilt and could not lay aside his opinion and render a verdict based on the evidence

presented in court. *See Bell v. Hurley*, 97 Fed.Appx. 11, *19, 2004 WL 446224, *6 (6th Cir. Mar. 10, 2004) (unpublished opinion) (citing to *Irvin*, 366 U.S. at 723)). However, a court will presume prejudice if a petitioner shows that his case falls within a narrow category of cases where the influence of the news media is such as to have created an inherently prejudicial environment. *Murphy v. Florida*, 421 U.S. 794, 798-99 (1975) (Prejudice is presumed where "a trial atmosphere . . . utterly corrupted by press coverage . . . has pervaded the proceedings.") .

However, a state court's finding that no evidence has been presented to support a claim is a factual finding not to be disturbed unless it is an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, *see* 28 U.S.C. § 2254(d)(2), or unless a petitioner provides clear and convincing proof to refute it. "This presumption of correctness also applies to the factual findings of a state appellate court based on the state trial record." *Bugh v. Mitchell*, 329 F.3d 496, 500-501 (6th Cir. 2003) (citations omitted). A state court's determination that a review of the state court record shows that no evidence has been presented in support of a claim is a factual finding. *Hardaway v. Withrow*, 305 F.3d 558, 563 (6th Cir. 2002), *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000) (a state court's determination that a petitioner had offered no credible evidence to support a claim that a key witness lied is a factual finding). The state court's

finding concerning the lack of proof is not unreasonable in light of the evidence and petitioner has presented no contravening proof.

If there was nothing in the state court record to show that the pretrial publicity was such as to deny petitioner a fair trial, then the petitioner did not show prejudice. A petitioner cannot prevail on an ineffective assistance claim absent a showing of a prejudicial performance. Deferring to this factual finding necessarily results in the conclusion that the resolution of this claim by the state court was not contrary to or an unreasonable application of *Strickland*.

### 3. *Illegal Indictment (Pet. at 6, Ground three)* and
### 4. *Illegal Judgment (Pet. at 6, Ground four)*

These claims have been combined for purposes of discussion. Petitioner first claims that his indictment, "code numbers," affidavits, warrants, days, month, and year were changed behind his back through fraud, conspiracy and perjury committed by his attorney, the prosecutor and the judge. Petitioner also alleges that a jailer in Mountain City told him about the warrant, but that he has neither seen nor been served with a warrant with respect to the charges against him. Petitioner next claims that his March, 1998 judgment was changed in February of 2000 by increasing the percentage of time he must serve before being eligible for parole from 30% to 100% of his child-rape sentence. Moreover, he insists that the new judgment is unsigned and contains no seal.

Respondent asserts that, like the first claim, these two claims have likewise been procedurally defaulted by petitioner's failure to present them to the appropriate state courts for review before he presented them as grounds for relief in his federal habeas corpus pleadings.

A review of the state court record in petitioner's direct appeal and in his post-conviction case does not show that these claims were included in his briefs in the Tennessee appellate courts. To the extent that petitioner is enlarging his prior claim of cause to include an assertion of ineffective assistance from all lawyers who represented him from October 23, 1994 up until the date he filed his habeas corpus case, that claim would also fail.

This is so because petitioner has failed to provide concrete examples of attorney error in connection with these two claims and because his naked allegation of ineffective assistance will not support a finding of cause. Nor will an allegation of ineffectiveness which has not been presented to state courts and, like this one, is itself defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Thus, Petitioner has committed an unexcused procedural default of both claims and, thereby, has forfeited federal review.

## III. The Amended Petition

Though the Court has found it difficult to interpret petitioner's scrambled, disorganized, and rambling hodgepodge of submissions,[2] he appears to be alleging that he had ineffective assistance of post-conviction counsel; that the judges, the prosecutor, and all of his lawyers played a role in a "frame-up" conspiracy to railroad him; that the prosecutor engaged in misconduct by presenting false testimony (i.e., the state's attorney allegedly coerced the victim and her mother to lie about petitioner); that he had ineffective assistance from trial counsel because of his failure to inform petitioner that he was charged with rape-of-a-child (according to petitioner, he learned of his child-rape charge the night before his sentencing); and that he is an innocent man, wrongfully convicted.

None of these claims were presented to Tennessee appellate courts and the failure to offer the claims to the state courts in the appropriate fashion amounts to a procedural default. If petitioner is reiterating his prior assertions of ineffective assistance as cause, the Court reaches the same conclusion about this claim of cause

---

[2] The proposed amendments are written on TDOC grievance forms, which have been labeled, "Exhibit-A." In addition to this rambling and verbose submission, petitioner has filed a copy of his TOMIS offender sentence letter (Exhibit-B), a copy of a motion to recuse and/or change of venue filed in the state supreme court during his post-conviction case (Exhibit-C), and a copy of a letter written to the prosecuting attorney, congratulating her for the "almost perfect way" she pursued the conviction of an innocent man (Exhibit-D). The letter was appended to the original petition as "Exhibit-B."

as it reached with the earlier claims. Because petitioner's procedural default has not been overcome by a showing of cause, federal review cannot be had.

But even if the claims have not been procedurally defaulted, they are fatally flawed. Claims that petitioner's counsel gave him ineffective assistance during his post-conviction case are not cognizable in this federal habeas corpus case. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). And none of the other claims which charge errors of various types during petitioner's state post-conviction case are recognizable in this federal forum either. *See Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (finding claims concerning supposed constitutional violations during post-conviction proceedings did not involve prisoner's detention and, therefore, were not cognizable under § 2254). *Accord, Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (stating that the claim challenging the state postconviction proceedings "would fail to state a federal constitutional claim cognizable in a federal habeas proceeding").

The claim that the judges, the prosecutor, and all of petitioner's lawyers played a role in a "frame-up" conspiracy to railroad him has no specific factual details to buttress it. A claim which lacks any factual support is conclusory, and it is well settled that conclusory claims fail to state a claim for relief under § 2254.

16

*Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991) (observing that bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation). *See also Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (noting that a petitioner must state facts that point to a real possibility of constitutional error to be entitled to habeas corpus relief). Thus, the claim is conclusory and cannot establish a basis for habeas corpus relief.

The claim that the prosecutor presented false testimony is bottomed on petitioner's allegation that the prosecutor coerced the victim and her mother to lie on the witness stand and to fabricate the entire event involving the offense conduct. To establish a due process violation by the State's knowing use of false testimony, a petitioner must show that the statement 1) was actually false, 2) material, and 3) known to be false by the prosecution. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted). While those statements were certainly material, petitioner has not shown them to be false or known to be so by the prosecutor.

Petitioner's argument that he had ineffective assistance from trial counsel because of counsel's failure to inform him that he was charged with rape-of-a-child, though he knew about the sexual exploitation charge, was also presented in the post-conviction proceedings as the opposite, i.e., that he knew about the child-rape charge, but not about the charge of especially aggravated sexual exploitation of a

minor. The discrepancy between the claims was explained by petitioner during the post-conviction hearing as an "honest mistake . . . [t]hat wasn't no dishonest mistake. I just made a (sic) honest mistake there when I put that down. About the charge," (Addendum 3, Pt. 1, Post-Conviction Hr'g T. at 141). At any rate, petitioner's contention that he lacked knowledge of his charges is contravened by the state court record. (Addendum 1, Pt. 1, Tr. T. at 135,152, and 153; Addendum 3, Pt. 2, Exh. 6, Pet'r's Letter of March 30, 1995, to the Judge acknowledging that he was charged with sexual exploitation of a minor and rape).

Finally, his claim of innocence is bolstered by no facts whatsoever. A petitioner establishes actual innocence by showing that it is more likely than not that, in light of all the evidence, no reasonable juror would have convicted him. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Schlup v. Delo*, 513 U.S. 295, 327-28 (1995)). "Actual innocence" is defined as factual innocence, not mere legal insufficiency. *Id.* at 623. Moreover, a credible claim of actual innocence must be supported by new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Petitioner has offered absolutely nothing to support his claim beyond his own self-serving protestations of innocence. Therefore, assuming that there is a free standing claim of actual innocence in a non-capital case, *but see Dretke v. Haley*, 541 U.S. 386, 396 (2004) (declining to decide "whether and to what extent the [actual innocence] exception extends to non-capital sentencing error") and

*Herrera v. Collins*, 506 U.S. 390, 404-405 (1993) ("We have never held that [the miscarriage of justice exception] extends to freestanding claims of actual innocence."), petitioner has failed to state one.

## IV. Certificate of Appealability

Finally, the Court must decide whether to issue a certificate of appealability (COA). Petitioner qualifies for issuance of a COA if he has made a substantial showing of the denial of a constitutional right; he makes such a showing by demonstrating that reasonable jurists might question the correctness of the Court's procedural rulings or its assessment of his constitutional claims. *See Slack v. McDaniel*, 529 U.S. 473 (2000). The Court has found that most of petitioner's claims were procedurally defaulted and that he had not made a sufficient showing of cause and prejudice to overcome this obstacle. The Court also found that the one claim which was adjudicated in state court would not support habeas corpus relief because, after an examination of the state court decisions, the record, and the relevant governing law in Supreme Court cases, that decision did not run contrary to well established federal law, did not reflect that the state court had unreasonably applied that law, and did not demonstrate that the state court had disposed of the claim by unreasonably determining the facts offered to those courts.

The Court now finds that reasonable jurists could not disagree with the resolution of these claims and could not conclude that they "are adequate to deserve

encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003), and will **DENY** issuance of a COA. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

A separate order will enter.

**ENTER:**

											_____
											J. RONNIE GREER
											UNITED STATES DISTRICT JUDGE